# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF KANSAS

RAMON RODRIGUEZ,

                Petitioner,

      vs.                         **Case No. 09-3034-RDR**

RAY ROBERTS, et al.,

                Respondents.

_____

## <u>MEMORANDUM AND ORDER</u>

Petitioner is incarcerated upon state court convictions. This case is now before the court upon his petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner proceeds <u>pro se</u>. Petitioner has filed a motion for appointment of counsel. Doc. No. 17. This motion shall be denied. Petitioner has raised a multitude of issues, many of which were raised earlier (as required to avoid procedural default) when petitioner was represented by counsel. Petitioner has more than adequately presented his claims in lengthy pleadings. After considering the nature of the issues raised by petitioner and the other circumstances in this case, the court believes that appointment of counsel is not required for this matter to be decided fairly.

I. HABEAS STANDARDS

The standards governing petitioner's claims for relief were recently summarized in <u>Bledsoe v. Bruce</u>, 569 F.3d 1223, 1230-31 (10th Cir.) <u>cert. denied</u>, 2009 WL 3423013 (2009):

In order to establish the right to federal habeas relief, the petitioner must show that the state court's determination was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). . . .

Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" the law established by the Supreme Court (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a[n opposite] result." Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); Gipson v. Jordan, 376 F.3d 1193, 1196 (10th Cir. 2004). A state court decision is an "unreasonable application" of Supreme Court precedent (1) "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular prisoner's case," or (2) "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 529 U.S. at 407, 120 S.Ct. 1495; Gipson, 376 F.3d at 1196. The state court's decision must be "more than incorrect or erroneous", it must be "objectively unreasonable." Wiggins v. Smith, 539 U.S. 510, 520-21, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); Wilson v. Sirmons, 536 F.3d 1064, 1073 (10th Cir. 2008).

Any state court factual findings, including credibility findings, are presumed correct unless that presumption is rebutted by clear and convincing evidence. Id. at 1231.

This court's review is limited to the examination of federal law issues. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

The law limits the authority of the court to hold an evidentiary hearing upon petitioner's application for relief:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that – – (A) the claim relies on – – (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

## II. CASE HISTORY

After a jury trial, petitioner was convicted of rape in violation of K.S.A. 21-3502, aggravated criminal sodomy in violation of K.S.A. 21-3506 and criminal restraint in violation of K.S.A. 21-3424. Petitioner was also acquitted of one count of aggravated criminal sodomy, which alleged digital anal penetration. The criminal restraint conviction was overturned on appeal on the grounds that it was multiplicitous. Petitioner is serving a sentence of 300 months imprisonment on these convictions.

There was evidence at trial that the alleged victim – "J.S." – met a female friend at a Johnson County nightclub where she mixed with other acquaintances, including petitioner. J.S. knew petitioner and had spoken with him several times before the alleged crimes in this matter. After the nightclub closed around 2:30

a.m., Javier Vallejos invited J.S. and others to his brother-in-law's house to continue partying. Vallejos was helping to look after the house while his brother-in-law was away. By daybreak, around 5:30 a.m., J.S. was very tired and Vallejos told her she could sleep in a bedroom. J.S. entered the bedroom, took off her shoes, and fell asleep on the bed. J.S. testified that she woke up and saw petitioner on top of her pinning her arms with his legs. She was naked below her waist, but never felt her clothes being removed. J.S. testified that petitioner penetrated her vagina and her anus with his fingers and put his penis in her mouth and ejaculated. According to J.S., after petitioner left the bedroom, J.S. gathered her clothes and went to the bathroom where she dressed and rinsed her mouth. Then, she entered the dining room crying and screaming, and accused petitioner of raping her. Petitioner left the house. J.S. also left and called the police. She made a report in which she did not state that petitioner put his finger in her anus. She also omitted this allegation in a later report to the police. The police escorted her to a hospital where a rape kit procedure was performed. But, no physical evidence at trial tied petitioner to the alleged crimes.

Two witnesses testified that petitioner was with them in the dining room of the house while J.S. was sleeping, but left for a brief period. They testified that shortly after petitioner returned to the dining room, J.S. entered from the bedroom upset

and crying.

On direct appeal from his convictions, petitioner raised the following issues: 1) that the trial court committed reversible error in refusing to grant a motion to strike a juror for cause; 2) that the trial court violated the law established in Batson v. Kentucky, 476 U.S. 79 (1986) and J.E.B. v. Alabama, 511 U.S. 127 (1994) by allowing the prosecutor to exercise peremptory challenges on the basis of gender; 3) that the trial court erred by allowing J.S.'s statements about the alleged rape to be repeated in the testimony of other witnesses; 4) that the trial court mistakenly allowed victim impact testimony during the guilt phase of the trial; 5) that the trial court permitted speculative testimony from a police officer regarding the lighting conditions of the bedroom where the rape allegedly occurred; 6) that the rape and criminal restraint convictions were multiplicitous; and 7) that there was insufficient evidence to show that petitioner was the perpetrator.

The Kansas Court of Appeals agreed with the multiplicity argument, but otherwise rejected petitioner's claims on direct appeal. The Kansas Supreme Court denied review.

Petitioner filed a petition for state habeas relief under K.S.A. 60-1507. In that petition, numerous claims were raised including: 1) the Batson issue regarding the removal of males from the jury panel; 2) whether the trial court should have removed two jurors for cause; 3) the sufficiency of the evidence; 4)

5

ineffective assistance of trial counsel; 5) whether a mistrial should have been declared; 6) whether the trial court denied petitioner the opportunity to present evidence of mitigation at sentencing; 7) prosecutorial misconduct; and 8) ineffective assistance of appellate counsel. Habeas relief was denied by the state district court and the denial was affirmed by the Kansas Court of Appeals. <u>Rodriquez v. State</u>, 2008 WL 3367543 (Kan.App. 2008). Review was denied by the Kansas Supreme Court.

III. ARGUMENTS FOR RELIEF

A. <u>Failure of trial court to strike juror</u>

Petitioner contends that his right to a fair trial was denied when the trial court refused to strike a Mr. Bryan as a juror during voir dire. Petitioner contends that Mr. Bryan should have been excused because he stated that he would be unable to concentrate on the case because of work demands and because he stated that the defendant needed to produce evidence to refute the prosecution.

Mr. Bryan made the following comments during voir dire:

MR. BRYAN: Well I have a hard time finding vacation. I'm a vice president of operations. I have three regional offices to open in Illinois next week. I don't know if that's what you are after, but that would bother me, yes.
. . . .
[Q.]: Let's talk about your job here. If you were chosen to be a juror, would you be able to set aside the fact [of] all the stuff you have to do next week? Can you set aside all of that?
MR. BRYAN: Since I'm the one ultimately responsible, it's hard.

[Q]:  Do you think if you're sitting in the jury box you might be thinking, "Gosh, I hope I get this done and this done"?
MR. BRYAN:  It's possible, absolutely.
[Q]:  Would you try?
MR. BRYAN:  I'm here.
[Q.]:  Okay.  Well, I appreciate that.  So you'd do what – – you'd try to concentrate, basically?
MR. BRYAN:  (Juror nods head.)

Transcript of voir dire, pp. 52-53.

[Q. From defense counsel] . . . So let's get back to what you talked about earlier, and that is, "I've got to look at both sides." There may not be both sides here.  The only person or party responsible for producing evidence is this side (indicating).  The Judge has told you that, also.  So if you don't hear evidence from the defense, what's that going to do for you?
. . . .
MR. BRYAN:  Yeah, I would think the defense would have to at least refute the State's case.
[Q.:]  Would we have to refute by putting on some evidence, do you think?
MR. BRYAN:  Or at least convincingly argue against it.
[Q.:]  I will ask questions of the witnesses, you can rest assured that will happen, okay?  And they're going to be hard questions, some of them hard, tough questions, because that's how we get to the truth, but that's not the same as me putting on witnesses and putting on evidence, those are two different things.
MR. BRYAN:  Fortunately, I understand.
[Q.:]  It's an intellectual exercise, but it's a real important one because when you get back in the jury box, the law is really clear on this.  Do you think I need to put on this evidence to persuade you?
MR. BRYAN:  Something like employment requirement, I'm used to hearing both sides of employee and employer, and it kind of triggers a little light bulb.
[Q.:]  It's different, right?  This is only in the criminal law we do this, and it's because of this obligation the State has if they want to lock one of our fellow citizens up they do not have to defend themselves, and they still have to come in and prove their case beyond a reasonable doubt, that's what our Constitution says.
MR. BRYAN:  I understand the concept, it's just hard to follow.

7

[Q.:] And is it something you think you could do?
MR. BRYAN: Yes I could, I think.

Transcript of voir dire at pp. 140, 144-46.

[Q. (By defense counsel)]: Mr. Bryan, you earlier expressed some concerns about your work situation. I think you mentioned you're supposed to open regional offices in Illinois next week.
MR. BRYAN: Yes.
[Q.:] Okay. We do not expect this to go into next week. The way we're going, who knows. No, we're not, we're still going to finish. Let's assume the case goes to Friday. You're going to be able to serve with us as a juror?
MR. BRYAN: I have a lot to do between now and Friday.
[Q.:] Could you do that work in the evenings, do you think?
MR. BRYAN: No.
[Q.:] No? Is there somebody that could?
MR. BRYAN: I'm instructing. I am instructing them, so I can't do it in the evening, they're being built during the day.
[Q.:] Is this a situation that might distract from your ability to listen to the evidence, that you're going to be worried about, "Oh, I'm supposed to get this done by next week, and it's not going to happen"?
MR. BRYAN: I can tell you I'm going to get pressure.
[Q.:] You're going to get pressure?
MR. BRYAN: Right.
[Q.:] For not getting it done?
MR. BRYAN: Right.
[Q.:] Will it adversely affect your work?
MR. BRYAN: We have a contractor in the State of Illinois that requires opening on the 1st of January so – –
[Q.:] And what happens if your contract's not fulfilled?
MR. BRYAN: We have to deal with lawyers.
[Q.:] Is fate worse than death. Okay. Well, I won't ask you any more questions. I guess the concern that the Judge has expressed earlier to other people, Mr. Bryan, is we don't want people in a position where other interests in their life detract from their ability to give their full, fair attention to this trial.
MR. BRYAN: Right.
[Q.:] Would not be fair to you, would not be fair to the litigants.
MR. BRYAN: I came here expecting it would probably last two or three days.

> [Q.:]  You know now that's not going to happen.
> MR. BRYAN:  I know now that's not going [to] happen.
> [Q.:]  Knowing that, do you think it would be difficult
> for you to participate in a week-long trial with these
> other work commitments and give your full, fair, and
> undivided attention to the trial and the evidence?
> MR. BRYAN:  It might cause my mind to drift, yes.
> [Q.:]  Okay.  All right.

Transcript of voir dire at pp. 217-19.

Petitioner's trial attorney moved to strike Mr. Bryan "based on his responses to questions regarding his job situation and his uncertainty whether that would detract from his ability to listen to the evidence, judge the case without distraction."  Transcript of voir dire at p. 222.  The trial judge did not excuse Mr. Bryan stating, "I think Mr. Bryan had plenty of chances to ask to be excused, plenty of chances for work matters, and indicated he was not going to exercise that right."  Transcript of voir dire at p. 223.  As this statement implies, other potential jurors did ask to be excused and were excused because of conflicts with work or other commitments.

Petitioner claims that rejecting the motion to strike Mr. Bryan as a juror denied him his constitutional right to a fair and impartial jury.  We reject this claim for the following reasons. First, the trial judge's assessment of responses in voir dire is entitled to "special deference."  Patton v. Yount, 467 U.S. 1025, 1038 (1984).  In addition, there has been no claim or proof that Mr. Bryan actually was biased against petitioner or that he failed to pay attention during the trial.  Accordingly, we believe it was

reasonable to find on this record that denying the motion to strike Mr. Bryan as a juror did not violate petitioner's rights under federal law. Furthermore, petitioner cites no authority which establishes that permitting Mr. Bryan to serve on the jury in spite of his work-related pressures was contrary to Supreme Court precedent.

Petitioner has added an argument that Mr. Bryan should have been stricken because he indicated that a defendant must "present evidence of his innocense" (sic). Doc. No. 1, p. 6. Petitioner misstates what Mr. Bryan said in voir dire. Mr. Bryan stated that he understood what petitioner's trial counsel was saying about the burden of proof and that he could apply it in his deliberations. Furthermore, the jury was instructed that petitioner was not required to prove he is not guilty (Instruction No. 6) and that the jury should not consider the fact that petitioner did not testify in arriving at a verdict (Instruction No. 8). There is no evidence or claim that the jury failed to follow these instructions.

In any event, the trial judge was not asked to strike Mr. Bryan on these grounds. Therefore, this argument must be rejected on the grounds of procedural default. "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas

petition." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b)(1)(A). "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991). "The procedural default doctrine and its attendant 'cause and prejudice' standard are grounded in concerns of comity and federalism, and apply alike whether the default in question occurred at trial, on appeal, or on state collateral attack." <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000) (citations and some internal quotation marks omitted). In other words, procedural default for federal habeas corpus purposes occurs when a state court has declined to address a federal claim because the petitioner failed to satisfy an independent state procedure requirement. <u>Coleman</u>, 501 U.S. at 729-30.

In this case, the Kansas Court of Appeals did not consider the claim regarding Mr. Bryan's comments on the burden of proof because it was not properly raised during voir dire before the trial court or upon direct appeal. <u>State of Kansas v. Rodriquez</u>, No. 85,125, slip op. at p. 7 (Kan.App. Oct. 4, 2002). This procedural default

11

is not excused by a showing of good cause for the default or actual prejudice or any exceptional circumstances.[1] Petitioner alleges no specific prejudice from the service of Mr. Bryan on the jury or from the denial of his motion to strike. Nor did Mr. Bryan's service on the jury cause a fundamental miscarriage of justice. Therefore, the court shall not consider petitioner's argument regarding Mr. Bryan's statements regarding the burden of proof in a criminal trial.

Petitioner further adds an argument regarding the trial court's failure to strike a Ms. Bradshaw as a juror because of comments she made regarding the burden of proof. During voir dire, the following exchange occurred:

> [Q.:] So would I need to present evidence for you other than asking questions of the State's witnesses in order for you to be able to make decisions on a not guilty verdict?
> MS. BRADSHAW: I would think so.

Transcript of voir dire, p. 147. The doctrine of procedural default applies to this argument, just as it applies to the previous argument. Petitioner did not raise the issue on direct appeal.

B. <u>Petitioner's Batson challenge</u>

The prosecuting attorney exercised twelve peremptory challenges. Nine male and three female prospective jurors were

---

[1] Later in this opinion the court rejects an ineffective assistance of counsel claim related to the jury service of Mr. Bryan.

removed by the prosecutor's challenges.  Petitioner's trial counsel raised a <u>Batson</u> objection alleging sex discrimination in the exercise of the prosecutor's peremptory challenges.  The trial judge denied this objection after listening to the prosecutor's reasons for striking the prospective jurors.  Petitioner raised this argument on direct appeal.  The Kansas Court of Appeals rejected the argument, finding that petitioner did not make a prima facie showing of a <u>Batson</u> violation and that the prosecutor had nondiscriminatory reasons for exercising the peremptory challenges.

The prosecutor gave the following reasons for striking certain male prospective jurors:  apparent lack of intelligence; being an attorney; hearing difficulty; youth (ages 18 and 21), so that the jurors might not have knowledge about the sexual nature of the case; take-charge demeanor; old-age (72) and demeanor; apparent disinterest in the case; being extremely quiet during voir dire, ergo an "unknown commodity"; and dating a criminal defense attorney.  Transcript of voir dire, at pp. 241-44.  The trial judge found that the prosecution had provided gender-neutral reasons for striking the prospective male jurors.  Transcript of voir dire at p. 245.

<u>Batson</u> challenges are analyzed under a three-step approach wherein the party making the challenge must make out a prima facie case producing an inference of discriminatory purpose, the burden then shifts so that the party defending the challenge must explain

adequately the race-neutral or gender-neutral reasons for striking a juror, and finally, the trial court must decide whether the opponent of the strike has proven purposeful discrimination. <u>U.S. v. Barrett</u>, 496 F.3d 1079, 1104 (10th Cir. 2007) <u>cert. denied</u>, 128 S.Ct. 1646 (2008). During petitioner's trial, the trial judge did not make an explicit finding of a "prima facie" case. But, on direct appeal the Kansas Court of Appeals found that there was no showing of a prima facie case. <u>State v. Rodriquez</u>, slip op. at p. 12. We will only review the findings as to the final two steps of the <u>Batson</u> analysis.

The state trial court findings are considered presumptively correct and can only be rebutted by clear and convincing evidence. <u>Saiz v. Ortiz</u>, 392 F.3d 1166, 1180 (10th Cir. 2004) <u>cert. denied</u>, 545 U.S. 1146 (2005) (reviewing a <u>Batson</u> claim in a § 2254 petition). "'[E]valuation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province.'" <u>Id</u>., quoting <u>Hernandez v. New York</u>, 500 U.S. 352, 365 (1991) (interior quotation omitted).

In this case, petitioner contends that the trial court's findings are not correct because, instead of dating a criminal defense attorney, the prospective juror was dating someone who worked at a law firm that did criminal defense work. Petitioner also argues that "youth" was a pretext for sex discrimination, because a 21-year-old female was not struck from the panel by the

14

prosecution.   These points do not clearly demonstrate that the trial court was objectively unreasonable in holding that the jurors were excused for gender-neutral reasons.   It is reasonable to believe that there is no significant difference between dating a criminal defense attorney or someone who works for a criminal defense attorney for purposes of determining possible juror bias. Even if the factual basis given by the prosecutor was somewhat incorrect, that discrepancy is more likely explained by factual misrecollection than a desire to hide purposeful gender discrimination.   Furthermore, the prosecutor stated that she challenged the young male jurors not only because of their youth but also because, "their demeanor portrayed a disinterest in the case."  Transcript of voir dire at p. 244.  In this respect, those panel members were apparently different from the young female who did serve on the jury.

We find that the state court's denial of petitioner's <u>Batson</u> claims is a reasonable application of the law and the facts. Therefore, the <u>Batson</u> argument for habeas relief is denied.

C.   <u>Cumulative testimony regarding J.S.'s out of court statements</u>

D.   <u>Victim impact testimony</u>

E.   <u>Officer Campbell's testimony regarding lighting conditions</u>

These issues will be considered together.  Petitioner argues that his Sixth Amendment and Fourteenth Amendment rights were

violated by trial court evidentiary rulings which permitted three types of testimony: 1) cumulative testimony from witnesses regarding what J.S. told them about the alleged crimes in this case; 2) testimony from J.S. regarding how the alleged crimes affected her; and 3) testimony from police officer Campbell regarding the lighting conditions in the bedroom where the alleged crimes took place.

These arguments do not warrant habeas relief for the following reasons. First, they must be rejected on the grounds of procedural default. Although objections at trial were made on the basis of state evidentiary rules and the objections were part of petitioner's direct appeal, no federal law claim was raised for a ruling by the state courts. Second, petitioner does not cite any legal authority to demonstrate that the state court rulings were "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). We acknowledge that "'[t]he Due Process Clause of the Fourteenth Amendment provides a mechanism for relief'" when "'evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair.'" Wilson v. Sirmons, 536 F.3d 1064, 1114 (10th Cir. 2008) (quoting Payne v. Tennessee, 501 U.S. 808, 825 (1991)). However, we do not find that the evidence in question was so unfairly prejudicial. See Castillo v. Johnson, 141 F.3d 218, 224 (5th Cir.)

cert. denied, 524 U.S. 979 (1998) (admission of testimony from victim's wife at guilt phase of murder trial); Mosely v. Quarterman, 2008 WL 656887 (N.D.Tex. 2008) (same); Walker v. Quarterman, 2009 WL 497155 (S.D.Tex. 2009) (admission of poem by sexual assault victim describing impact of alleged crime did not amount to denial of fundamental fairness or otherwise deny due process).

Finally, even if the rulings incorrectly applied the state law on evidence, that is not grounds for habeas relief. As already mentioned, "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 67-68.

F.  Multiplicitous counts

Petitioner argued successfully on direct appeal that the charges of rape and criminal restraint were multiplicitous. The conviction for criminal restraint was reversed by the Kansas Court of Appeals. State v. Rodriquez, slip op. at pp. 27-28. Petitioner argues that his other convictions should be vacated because his trial on those counts was tainted by the "additional evidence presented" to support the criminal restraint count. Doc. No. 1, p. 25. The Kansas Court of Appeals reversed the criminal restraint conviction because it was part of the same continuous criminal act as the conviction of rape. Thus, there is no reason to think there was "additional evidence." Petitioner does not describe what

"additional evidence" was presented because of the criminal restraint charge or otherwise persuade this court that the criminal restraint charge made any significant difference in the presentation of the case. Therefore, this argument for habeas relief shall be denied.

G. <u>Insufficient evidence</u>

Petitioner contends that there was insufficient evidence to support a verdict that petitioner was guilty beyond a reasonable doubt. The standard this court must apply to this argument is whether upon the evidence produced for the record at trial any rational trier of fact could have found petitioner guilty beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979); <u>Rojem v. Gibson</u>, 245 F.3d 1130, 1141 (10th Cir. 2001). "[T]his inquiry does not require a court to 'ask itself whether <u>it</u> believes that the evidence at the trial established guilt beyond a reasonable doubt.'" <u>Jackson</u>, 443 U.S. at 318-19. The Tenth Circuit has further stated:

> This standard reflects our system's long-standing principle that it is the jury's province to weigh the evidence and to draw reasonable inferences from testimony presented at trial. Our review under this standard is sharply limited, and a court faced with a record of historical facts that supports conflicting inferences must presume – – even if it does not affirmatively appear on the record – – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.

<u>Turrentine v. Mullin</u>, 390 F.3d 1181, 1197 (10th Cir. 2004) <u>cert. denied</u>, 545 U.S. 1106 (2005) (internal citations and quotations

omitted).

The court has carefully reviewed the entire trial transcript in this case. The critical facts have already been summarized in this opinion. The testimony of the alleged victim in this case provided sufficient evidence to support the jury verdicts against petitioner. That testimony received corroboration from other witnesses who placed petitioner in the house at the time of the alleged crimes and testified that petitioner left their presence (while the alleged victim was sleeping in a bedroom) and then returned some number of minutes later. These witnesses also testified regarding the victim's conduct immediately after the alleged crimes. The victim was upset and accused petitioner of raping her. There were some inconsistencies in the various statements made by the victim to different persons and during her testimony at trial.[2] There was also conflicting evidence as to the victim's relative sobriety at the time of the alleged crimes. However, a reasonable jury could believe the victim's testimony and it was reasonable for the Kansas Court of Appeals to find that this

_____

[2] For example, the victim testified that petitioner ejaculated into her mouth and that she was forced to swallow petitioner's semen. (Tr. 57-58). She also testified that "I don't recall [if his penis went inside her mouth], I try to block it out," that she "probably" felt petitioner's penis on her lips "a little bit," and that she was positive about the penis in her mouth. (Tr. 58 & 68). These and other inconsistencies in her testimony are not sufficient to warrant habeas relief. See Parker v. Scott, 394 F.3d 1302, 1314-15 (10th Cir. 2005)(denying habeas relief in spite of numerous contradictions in testimony of child witness who was allegedly sexually abused by the petitioner).

evidence was sufficient for a rational factfinder to conclude that petitioner was guilty of the charges against him. See <u>Jones v. McKune</u>, 214 Fed.Appx. 784 (10th Cir. 2007) (habeas relief denied on rape conviction supported only by testimony of victim); <u>Sullivan v. Bruce</u>, 44 Fed.Appx. 913 (10th Cir. 2002) (on habeas review, victim's testimony sufficient to support attempted rape conviction); <u>U.S. v. Howard</u>, 218 F.3d 556, 565 (6th Cir. 2000) (testimony of a rape victim alone is sufficient to support a defendant's conviction); see also, <u>Ware v. Parker</u>, 298 Fed.Appx. 727 (10th Cir. 2008) (holding on habeas review that "physical" evidence - - such as DNA test results - - is not necessary to establish guilt in a first-degree rape trial in Oklahoma).

In petitioner's reply brief, he adds an argument that the jury was instructed upon two different theories of guilt ("force or threat" and "incapacity to consent due to intoxication") and that this resulted in an inconclusive verdict. Doc. No. 15 at p. 13. This argument was not made by petitioner at the state court level, although the Kansas Court of Appeals considered the issue to some extent in connection with the multiplicity claim. Therefore, the claim must be rejected on the grounds of procedural default. The claim must also be rejected because the record makes clear that the jury must have decided defendant's guilt on the basis of the "force or threat" theory. <u>State v. Rodriquez</u>, slip op. at 27. There is no constitutional defect here. See <u>U.S. v. Mullins</u>, 446 F.3d 750,

757 (8th Cir.) <u>cert. denied</u>, 549 U.S. 923 (2006) (refusing to reverse a conviction when an instruction gave an alternative theory of criminal liability for which there was insufficient evidence); <u>U.S. v. Hanzlicek</u>, 187 F.3d 1228, 1235-36 (10th Cir. 1999) (same).

H.  <u>Ineffective assistance of trial counsel</u>

Petitioner claims entitlement to habeas relief on the grounds of ineffective assistance of trial counsel.  The Sixth Amendment to the Constitution guarantees the right to effective assistance of counsel.  <u>Strickland v. Washington</u>, 466 U.S. 668, 684-86 (1984). To establish an ineffective assistance of counsel claim, it must be shown that:  1) counsel's performance was deficient; and 2) that the deficient performance caused prejudice to the defendant. <u>Strickland</u>, 466 U.S. at 687.

> In determining if counsel's performance was deficient, we "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."
>
> In determining prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." "When a defendant challenges a conviction, the question is whether there is a reasonable probability that absent the errors, the factfinder would have had a reasonable doubt respecting guilt."

<u>Bledsoe</u>, 569 F.3d at 1231 (quoting, in order, <u>Strickland</u>, 466 U.S. at 690, 689, 694 and 695, interior citations omitted).

Petitioner made the following ineffective assistance of trial counsel claims on the appeal of the district court's denial of his petition for state habeas relief under K.S.A. 60-1507: 1) failure of trial counsel to impeach the alleged victim with evidence of a W-2 statement indicating she used a different name to avoid tax liability and other evidence regarding the alleged victim's personal background; 2) failure of trial counsel to order a DNA test of hair recovered from the bed or the alleged victim's clothes; 3) decision of trial counsel to waive an interpreter for the trial; and 4) trial counsel's advice to waive petitioner's right to testify at trial. Any other claims of ineffective assistance of trial counsel were not presented to the Kansas appellate courts and federal habeas review is barred by procedural default.[3]

When an ineffective assistance of counsel claim is based on a failure to investigate and elicit testimony from witnesses, the petitioner must "'demonstrate with some precision, the content of

_____

[3] This would include claims that trial counsel should have impeached the alleged victim with evidence that she was at a nightclub several months after the alleged crimes; that the victim's work and marriage history should have been used to impeach her testimony; that trial counsel was not familiar with Kansas law; that trial counsel should have used a peremptory challenge against juror Bryan; and that trial counsel should have had a blood sample from the victim tested for alcohol content. In addition, these claims should be denied because petitioner cannot demonstrate that these errors caused prejudice to petitioner's defense, such that in the absence of the errors, there would have been a reasonable probability of a different result.

the testimony they would have given at trial.'" Lawrence v. Armontrout, 900 F.2d 127, 130 (8th Cir. 1990) (quoting United States ex rel. Cross v. DeRobertis, 811 F.2d 1008, 1014-15 (7th Cir. 1987)). Without a specific, affirmative showing of exculpatory evidence, the prejudice prong of the Strickland test is not met. Patel v. United States, 19 F.3d 1231, 1237 (7th Cir. 1994). Speculation does not satisfy petitioner's obligation to demonstrate a reasonable probability that the outcome would have been different. U.S. v. Boone, 62 F.3d 323, 327 (10th Cir. 1995). Nor does it warrant an evidentiary hearing. Tafoya v. Tansy, 9 Fed.Appx. 862 at **6 (10th Cir. 2001).

Aside from a W-2 form, petitioner does not proffer any specific evidence to support a claim that his trial counsel was ineffective for failing to investigate and present testimony or other evidence. He only speculates that favorable DNA evidence would have been produced. This is insufficient to prove prejudice.

As for the W-2 form, the court agrees with the state appellate court that the evidence of the W-2 form would probably be inadmissible under K.S.A. 60-422(d) because it represented a specific instance of misconduct presented to prove a character trait. State v. Aldrich, 658 P.2d 1027, 1028-29 (Kan.) cert. denied, 464 U.S. 819 (1983); State v. Penn, 201 P.3d 752, 766 (Kan.App. 2009). Therefore, petitioner has not shown that his trial counsel was deficient in this regard.

The state court also ruled reasonably upon petitioner's claim that his trial counsel was ineffective because he did not ask for an interpreter at trial. The evidence indicated that petitioner's trial counsel believed that he effectively communicated in English with petitioner before and during the trial. Petitioner moved to the United States in 1965. He received English instruction and took college courses in English. He worked jobs which required an understanding of English. He married an American woman in 1966 and their primary language at home was English. Petitioner did not ask his counsel to request an interpreter. There is substantial evidence to support the state courts' findings that trial counsel was not ineffective for failing to ask for an interpreter.

Finally, petitioner contends that his counsel was constitutionally ineffective because he did not allow petitioner to testify at trial. Petitioner did not testify at trial. However, a lengthy video recording was played at trial. In this recording, petitioner gave his version of the events in a statement to the police. In this manner, petitioner was able to present his position to the jury without being subjected to cross-examination. During the hearing upon petitioner's state habeas petition, petitioner's trial counsel testified that he and petitioner prepared for petitioner to testify but that petitioner ultimately decided against it. Petitioner stated during the state habeas hearing that he was not aware until closing arguments that he was

not going to testify.

The state district court determined that petitioner voluntarily waived his right to testify after consulting with his trial counsel. The state district court further determined that petitioner's failure to testify did not cause prejudice to his defense because the jury listened to his statement to the police but convicted petitioner. Petitioner did not indicate how his testimony at trial would have been different from the statement he made to the police.

The findings of the state court are reasonable and supported by substantial evidence. Therefore, we reject petitioner's claim of ineffective assistance of trial counsel.

I.  <u>Ineffective assistance of appellate counsel</u>

Petitioner asserts that his counsel on direct appeal was ineffective because she failed to properly argue that Mr. Bryan should have been stricken from the jury, and she failed to argue that Ms. Bradshaw should have been stricken from the jury because of Bradshaw's comments regarding the burden of proof.

A habeas petitioner may succeed upon a claim of ineffective assistance of appellate counsel if he shows 1) his appellate counsel's performance was somehow deficient, and 2) that he suffered prejudice as a result of this deficient performance. <u>Coronado v. Ward</u>, 517 F.3d 1212, 1216 (10th Cir.) <u>cert. denied</u>, 129 S.Ct. 134 (2008). Our review of appellate counsel's performance

must be "highly deferential." <u>U.S. v. Challoner</u>, 583 F.3d 745, 749

(10th Cir. 2009). The Tenth Circuit has further stated:

> The omission of a 'viable' issue . . . does not in and of
> itself constitute ineffective assistance of counsel. . .
> . [The] process of winnowing out weaker arguments on
> appeal and focusing on those more likely to prevail, far
> from being evidence of incompetence, is the hallmark of
> effective appellate advocacy. . . . Nevertheless, the
> omission of a "dead-bang winner" by counsel is deficient
> performance which may result in prejudice to a defendant.
> . . . A "dead-bang winner" is an issue which was obvious
> from the trial record <u>and</u> which would have resulted in a
> reversal on appeal.

<u>Id</u>. (quotations and citations omitted).

It is reasonable to defer to the judgment of petitioner's

appellate counsel with respect to the issues petitioner claims she

should have raised on direct appeal. In <u>Patton</u>, 467 U.S. at 1036,

the Court discusses a habeas petitioner's argument that he deserved

a new trial in part because one juror was seated over his challenge

for cause even though the juror said during <u>voir dire</u> that he would

have required evidence to change his mind about the petitioner's

guilt.[4] The Supreme Court held that the record was insufficient to

overcome the presumption of correctness attached to the trial

judge's holdings during voir dire. Based on the <u>Patton</u> holding,

petitioner's appellate counsel did not perform deficiently by

omitting from appeal any issue regarding Mr. Bryan's or Ms.

Bradshaw's voir dire statements involving the burden of proof. See

_____

[4] The juror also stated at one point that he thought he could
enter the jury box with a "very open mind." 467 U.S. at 1039.

also, <u>U.S. v. Quintero-Barraza</u>, 78 F.3d 1344, 1349 (9th Cir. 1995)

<u>cert. denied</u>, 519 U.S. 848 (1996) (no ineffective assistance of

counsel in failing to strike juror who stated his belief that one

is guilty before proven innocent, noting <u>inter alia</u> the oath one

takes as a juror).

Any other issues raised by petitioner relating to ineffective

assistance of appellate counsel fail because those issues have not

been raised previously or have been demonstrated in this opinion or

previous opinions to lack merit.

J.  <u>Prosecutorial misconduct</u>

Petitioner contends that there was prosecutorial misconduct

during his trial in the following respects:  1) evidence, such as

hair samples and DNA samples, were not taken from other men at the

house at the time of the alleged crimes; 2) the alleged victim's

blood sample was destroyed so that its alcohol content could not be

tested; 3) the prosecution "created" evidence that the alleged

victim's pubic hair was found on the bedding at the scene of the

alleged crime; 4) the prosecutor lied about her reasons for using

certain peremptory strikes; 5) the prosecutor introduced evidence

and misrepresented evidence in opening statement; 6) the prosecutor

employed perjured testimony; 7) the prosecutor vouched for the

testimony of certain witnesses in closing argument; and 8) the

prosecutor made inflammatory and misleading comments in her closing

statement.

Petitioner did not argue prosecutorial misconduct on direct appeal. Therefore, petitioner was barred from making this argument in his state habeas proceedings. Transcript of Proceedings, Vol. 18 of State Records, at pp. 3-5.

"In Kansas the failure to challenge a trial error on direct appeal results in a procedural default unless (1) the error is one 'affecting constitutional rights' and (2) 'exceptional circumstances excus[e] the failure to appeal' on the issue. Kan.Sup.Ct.R. 183(c). To establish exceptional circumstances, a defendant must show '(1) ineffective assistance of trial counsel in failing to object regarding an issue; (2) ineffective assistance of direct appeal counsel in failing to raise the issue; or (3) newly discovered evidence or an unforeseeable change in circumstances or constitutional law unknown to counsel and the movant at the time of trial and direct appeal.'" <u>Graham v. Koerner</u>, 322 Fed.App. 577, 581-82 (10th Cir. 2009) (quoting <u>Bledsoe v. State</u>, 283 Kan. 81, 150 P.3d 868, 877 (Kan. 2007)).

As the Kansas Court of Appeals stated in its opinion upon the appeal of petitioner's state habeas motion:

> In regards to new issues raised, a K.S.A. 60-1507 motion may not be used as a substitute for a direct appeal raising mere trial errors unless it is shown that the trial errors affected the movant's constitutional rights and exceptional circumstances excuse the movant's failure to raise the issues on direct appeal. Kansas Supreme Court rule 183(c)(3) (2007 Kan.Ct. R. Annot. 243); <u>State v. Swisher</u>, 281 Kan. 447, 449-50, 132 P.3d 1274 (2006). "'Exceptional circumstances are unusual events or intervening changes in the law which prevent a movant

> from reasonably being able to raise all of the trial
> errors in the first post-conviction proceeding.'
> [Citation omitted.]" <u>Woodberry v. State</u>, 33 Kan. App.2d
> 171, 175, 101 P.3d 727, <u>rev denied</u> 278 Kan. 853 (2004).

<u>Rodriguez v. State</u>, 2008 WL 3367543 at *3 (Kan.App. Aug. 8, 2008).

Federal courts respect the imposition of state procedural bars. In <u>Neill v. Gibson</u>, 278 F.3d 1044, 1057 (10th Cir. 2001) <u>cert. denied</u>, 537 U.S. 835 (2002), the court held that federal habeas review of a prosecutorial misconduct claim was precluded because the claim was subject to state procedural default, unless "cause and prejudice" excused the default or the refusal to consider the claims would result in a "fundamental miscarriage of justice."

In this instance, there is no adequate excuse which justifies the procedural default for the following reasons. First, petitioner does not directly argue any excuse for failing to raise prosecutorial misconduct on direct appeal. Second, any claim of ineffective assistance of counsel would fail because petitioner cannot demonstrate that he suffered any prejudice from the failure to raise prosecutorial misconduct. Nothing demonstrates that evidence from other persons at the scene of the alleged crime would have been exculpatory or that a blood alcohol test upon the alleged victim's blood sample would have benefitted petitioner's case. Petitioner has not established that the prosecutor fabricated evidence of a pubic hair or that she intentionally employed

perjured testimony.[5]

Petitioner failed to demonstrate that the prosecutor told material falsehoods to justify her peremptory challenges when petitioner unsuccessfully argued his <u>Batson</u> claim. There is no grounds to grant habeas relief on this issue.

The remaining issues concern vouching, inflammatory remarks and misrepresentation of evidence. A prosecuting attorney may not personally vouch for the credibility of witnesses. "Argument or evidence is impermissible vouching only if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony." <u>U.S. v. Bowie</u>, 892 F.2d 1494, 1498 (10th Cir.

---

[5] Knowing use of perjured testimony by the prosecution violates a defendant's due process rights. To demonstrate such a violation, a defendant must show: 1) that the testimony was false, 2) that it was material, and 3) that it was knowingly and intentionally used by the government to obtain a conviction. <u>U.S. v. Wolny</u>, 133 F.3d 758, 762 (10th Cir. 1998). "Contradictions and changes in a witness's testimony alone do not constitute perjury and do not create an inference, let alone prove, that the prosecution knowingly presented perjured testimony." <u>Tapia v. Tansy</u>, 926 F.2d 1554, 1563 (10th Cir.) <u>cert. denied</u>, 502 U.S. 835 (1991).
Petitioner focuses on conflicting testimony that petitioner washed her mouth with water, as opposed to soap and water, after the alleged sexual assault. Petitioner contends that soap was not used and that any evidence to the contrary was instigated falsely by the prosecution. This appears to be an immaterial inconsistency and does not demonstrate prosecutorial misconduct or a violation of fundamental fairness.

1990).

However, not every error of this sort justifies relief from a conviction.

> Not every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a failure to observe that fundamental fairness essential to the very concept of justice. To be entitled to relief, a defendant must establish that the prosecution's conduct or remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process. Such a determination may be made only after taking notice of all the surrounding circumstances, including the strength of the state's case.

Hamilton v. Mullin, 436 F.3d 1181, 1187 (10th Cir.) cert. denied, 549 U.S. 1023 (2006) (quotations and citations omitted). "Improper vouching for witnesses falls within this general principle." Cargle v. Mullin, 317 F.3d 1196, 1220 (10th Cir. 2003); see also, Douglas v. Workman, 560 F.3d 1156, 1177 (10th Cir. 2009) (inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding); U.S. v. Franklin-El, 555 F.3d 1115, 1125 (10th Cir.) cert. denied, 129 S.Ct. 2813 (2009) (referring to testimony as a lie does not constitute per se prosecutorial misconduct). Moreover, Kansas state courts commonly state that prosecutors are granted wide latitude in their closing arguments. See, e.g., State v. Denny, 172 P.3d 57, 61 (Kan.App. 2007) cert. denied, 129 S.Ct. 422 (2008). Therefore, it is not deficient performance if an attorney declines to argue

prosecutorial misconduct on appeal if he reasonably feels that a prosecutor's conduct falls within those wide boundaries.

The court has carefully reviewed the record in this case. The court does not believe all of the prosecutor's comments were proper. But, the court is convinced that the jury was able to fairly evaluate the evidence. The jury was instructed that the attorneys' statements were not evidence and that the jury would have to make the factual findings in the case. Both attorneys acknowledged the critical role of the jury in making credibility findings and most of their comments were merely fair comment upon how those findings could be made. After due consideration, the court is not convinced that there exists a reasonable probability that the results of petitioner's trial or direct appeal would have been different had the prosecutorial misconduct claims been raised. Therefore, it was not ineffective assistance of counsel to omit claims of prosecutorial misconduct on direct appeal, and there is no cause and prejudice or fundamental miscarriage of justice or exceptional circumstance which warrants the consideration of this question on habeas review.

IV.  MOTION FOR EVIDENTIARY HEARING

Petitioner has filed a motion for an evidentiary hearing. This motion shall be denied. The court believes the materials already before the court provide what is necessary to decide the issues presented in this matter. In addition, petitioner has

failed to make the showing necessary under 28 U.S.C. § 2254(e)(2) for an evidentiary hearing.

V.   CONCLUSION

For the above-stated reasons, the petition for habeas corpus relief shall be denied.  Petitioner's motions for appointment of counsel and an evidentiary hearing are also denied.

**IT IS SO ORDERED.**

Dated this 30th day of December, 2009 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge